**Theron M. Hall, III**
**The Hall Law Firm, P.C.**
50 West Vaughn, Ave. Ste. 204
Gilbert, Arizona 85234
Phone (602) 222–6699
lawyer@theronhall.com
Arizona Bar No. 019114
**Attorney for Defendant**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>v.<br>Michael Anthony Stephens,<br>Defendant | Case No. 2:23-cr-00125-2-PHX-DJH<br><br>**DEFENDANT MICHAEL ANTHONY STEPHENS' OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT AND SENTENCING MEMORANDUM** |

Defendant, Michael Anthony Stephens, through undersigned counsel, respectfully makes the following objections to the Presentence Investigation Report and makes a recommendation of a sentence of time-served.

The Base Offense Level of 19 was incorrectly calculated. Probation has asserted that Mr. Stephens should be held responsible for 232.0 grams of fentanyl and 58 grams of methamphetamine. The facts, plea agreement and Guidelines do support this calculation.

Mr. Stephens came clean with federal agents when he was interviewed about this matter. He explained that he only used methamphetamine with his co-defendant a "couple of times." Mr. Stephens never used or received fentanyl from the co-defendant. Mr. Stephens was not part of any conspiracy with the co-defendant involving the possession/distribution of methamphetamine or fentanyl. Mr. Stephens simply used a very little amount of methamphetamine that had been provided by the co-defendant. Mr. Stephens did not know the types or amounts of drugs possessed by the co-defendant, other than the methamphetamine provided. Mr. Stephens was not aware of where the co-defendant obtained the drugs, to whom the drugs may have been sold, etc. Again, Mr. Stephens was provided a minimal amount of methamphetamine which he used; and he failed to report this to the authorities—thus the misprision of a felony.

There does not appear to be any case law to support Probation's Baseline calculation. The only drugs of which Mr. Stephens was aware was the minimal amount of methamphetamine that he and the codefendant used together. The factual basis of Mr. Stephens' plea agreement notes that the co-defendant possessed 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine. There is no mention of fentanyl in Mr. Stephens' plea agreement. The co-defendant's plea agreement states that the co-defendant was in possession of 58 grams of methamphetamine; however, no amount of methamphetamine is written in Mr. Stephens' plea agreement. Again, Mr. Stephens' plea agreement only states that the co-

defendant possessed 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine.

Mr. Stephens never received or used any fentanyl provided by the co-defendant. Mr. Stephens never saw the co-defendant possess fentanyl and was completely unaware that the codefendant had any fentanyl. A noted above, Mr. Stephens' plea agreement does not mention fentanyl, rather it only mentions methamphetamine. Furthermore, the government bears the burden of proof regarding drug types and the amount of drugs; and the government has not alleged that Mr. Stephens used, possessed or was aware of any fentanyl related to this matter. Thus, there is no basis to use any fentanyl possessed by the co-defendant in the calculation of Mr. Stephens' Baseline Offense level. Especially since there was no allegation that Mr. Stephens was involved in any drug conspiracy or drug trafficking with the co-defendant.

For reasons detailed above, Paragraph 16 wrongly asserts that Mr. Stephens was an average participant involving 232.0 grams of fentanyl and 58.0 grams of methamphetamine. Again, Mr. Stephens was not involved with any drug trafficking. He did NOT produce, make arrangements for the sale, transport, supervise, have any part or understanding of a drug trafficking organization, etc. Mr. Stephens simply used a very small amount of methamphetamine that was provided to him by the co-defendant; and failed to report this to authorities.

Using only the 58.0 grams of methamphetamine possessed by the co-defendant, the Guidelines should reflect a Base Offense Level of 24 under Guidelines Section 2D1.1 for 50 to 200 grams of

methamphetamine; as opposed to Probation's asserted Base Offense Level of 26, which is based on both the fentanyl and methamphetamine.

Even though firearms were possessed, they were not involved in any drug transaction. The firearms were not used to provide muscle, to intimidate, to make threats of violence, etc. Thus, there is an argument that there should not be a two-level increase under Guidelines 2D1.1(b)(1). But, even with a two-level addition for the possession of a firearm under Guidelines 2D1.1(b)(1) and a nine-level reduction under Guidelines 2X4.1(a), the resulting Adjusted Offense Level is Level 17, as opposed to level 19 (Base Offense Level 24 + 2 for firearms – 9 for misprision = Adjusted Offense Level of 17).

With three levels reduced for acceptance of responsibility under Guidelines Sections 3D1.1(a) and (b), the Total Offense Level should only be 14. Level 14 with a Criminal History Category I, results in a range of 15 to 21 months. As of the date of sentencing, Mr. Stephens will already have already served 445 days, just five days shy of 15 months.

Paragraphs 13 and 16 contain incorrect allegations. Mr. Stephens has never stated, nor did he tell law enforcement that he knew that the co-defendant was a convicted felon and could not possess firearms. A detailed review of the audio-recording of Mr. Stephens' interview with federal agents confirms this. Mr. Stephens did acknowledge that he had been told that the co-defendant had been to prison before. However, the mere fact that someone has previously been to prison does not automatically make that person a prohibited possessor. Even after serving prison, one can legally own firearms if their conviction is

expunged, vacated, dismissed and/or their civil rights are restored. Nothing suggested to Mr. Stephens that this was not the case with the co-defendant. Mr. Stephens did not know for sure when and where the co-defendant went to prison, nor the length of the prison sentence—which can be substantiated by reviewing the audio recording of Mr. Stephens' interview with law enforcement. Furthermore, even though Mr. Stephens was originally charged with the sale of firearms to a felon under 18 U.S.C. Section 922(D)(1) and 924(a)(8), he never plead guilty or admitted such violation. Likewise, Mr. Stephens has never been charged with nor has he plead guilty to making alleged false statements on ATF forms. Again, Mr. Stephens has only plead guilty for his failure to report to law enforcement that the co-defendant possessed drugs for sale.

Mr. Stephens also denies the allegation in Paragraph 36, related to a pending case in State court.

Paragraph 47 should be corrected to note that Mr. Stephens previously drank about a quart of alcohol on weekends, but not on weekdays. He would not have been able to maintain steady employment if he were drinking throughout the week.

Mr. Stephens did not smoke marijuana daily from the age of 23 until 43. Regular use of marijuana only started after he was severely injured and left permanently disabled. While working his full-time job, Mr. Stephens fell and suffered serious fractures in five vertebrae, sustained several ruptured discs and extensive nerve damage throughout his spine. To this day, he continues to suffer extreme and continual pain. Simply put, the pain is excruciating and substantially restricts his

physical activity. For years he was prescribed opioids, including fentanyl patches, for the overwhelming pain; however, despite still having the excruciating pain, he was cut off from his prescriptions. Mr. Stephens unfortunately only found relief by self-medicating. The pain has continued while incarcerated. Only after CCA medical personnel received Mr. Stephens' past medical records and made many medical assessments, was he finally prescribed pain medication while in custody. For many months, however, he had to suffer without any medication when he was in custody.

Paragraph 50 should reflect that Mr. Stephens used methamphetamine up to four times a week from the ages of 20 to 25; however, it was usually much less than four times a week. From the age of 25 until after he turned 50, Mr. Stephens did not use methamphetamine. He only started up again to self-medicate when his pain medications were cut off. Even then, he used methamphetamine maybe three to four times a week. Marijuana was very effective in reducing his pain and symptoms. He has not used any methamphetamine or any other type of illegal drug since 2022. When Mr. Stephens' mother passed away, he suffered severe anxiety and grief. He was prescribed Xanax; he did not use methamphetamine at that time.

As noted in Paragraph 51, Mr. Stephens long participated in substance abuse meetings and counseling. He personally sponsored four other individuals and was instrumental in helping them overcome their own addictions. He greatly regrets his relapse and desires to again live a life of sobriety.

Mr. Stephens attended high school at Washington High School until his sophomore year. After that, he started working full-time. He eventually earned his GED in Idaho. *See* Paragraphs 52 and 53.

Paragraph 56 should note that Mr. Stephens started working for 21st Century Sound in 1984, installing car stereos. After working there for about five years, he moved to Idaho where he continued in the same line of work with In One Ear Audio and Wick's Car Stereo. When he eventually returned to Arizona, he started installing home security systems, working for Shadow Scans Security, Sonoran Security, and eventually opened his own business MAS Security, which he ran for five years. After getting divorced, he worked with Safeguard Security until he suffered his injuries and became disabled.

Mr. Stephens has lost everything since he was taken into custody in this matter. People broke into his house and stole everything, including his furniture, clothes, and all his other property. Since he was no longer receiving disability payments, Mr. Stephens was unable to pay his mortgage and his house was foreclosed by the bank. He is now homeless and owns nothing. He will only have the clothes that he is wearing when released from custody. Mr. Stephens has lost much more than his freedom due to this matter. He has lost everything he has ever owned.

This is Mr. Stephens' first conviction in 31 years. His only other conviction was for possession of methamphetamine and that was set aside many years ago. Mr. Stephens is willing to live in a half-way house

and attempt to find employment. He will have difficulty given his constant pain and disability, but he will do his very best.

For the reasons detailed herein, it is requested that Mr. Stephens be given a sentence of time-served in this matter.

Respectfully submitted this 24th day of April, 2024.

*s/ Theron M. Hall, III*
Theron M. Hall, III

**MAIL CERTIFICATE**

**I HEREBY CERTIFY THAT ON THE 24TH DAY OF APRIL, 2024, I ELECTRONICALLY TRANSMITTED THE ATTACHED DOCUMENT TO THE CLERK'S OFFICE USING THE CM/ECF SYSTEM. A COPY WAS ALSO E-MAILED TO THE HONORABLE DIANE J. HUMETEWA.**

*s/ Theron M. Hall, III*
Theron M. Hall, III